## In re L.A.B.

[Cite as *In re L.A.B.*, 121 Ohio St.3d 112, 2009-Ohio-354.]

(Nos. 2007–0895 and 2007–0912—Submitted September 17, 2008—Decided February 5, 2009.)

LANZINGER, J.

{¶ 1} In this case, we are asked to determine whether Juv.R. 29 applies to probation revocation hearings in juvenile courts. We hold that it does. We also hold that the totality-of-the-circumstances test established in *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 108, applies to determine whether a valid waiver of counsel has been made by a juvenile.

## I. Case Background

{¶ 2} In August 2005, appellant L.A.B., then 13, was found delinquent by the Juvenile Division of the Summit County Court of Common Pleas for entering an enclosed porch and stealing a minibike. He was placed on juvenile probation. L.A.B. appeared before the juvenile court a total of eight times.[1] At the second hearing, and at each hearing afterward, he waived his right to counsel; until the last, each hearing ended with L.A.B. either being placed on probation or remaining on probation. On June 8, 2006, he again appeared before the court and waived his right to counsel. But at this last hearing, which the magistrate initially termed a "preliminary hearing on a probation violation," L.A.B.'s probation was revoked and he was sent to the Ohio Department of Youth Services for at least one year and potentially until he reached the age of 21.

{¶ 3} L.A.B. appealed, contending that his constitutional right to counsel had been violated. The Ninth District Court of Appeals affirmed the judgment, holding in part that Juv.R. 29 does not apply to probation revocation hearings and that because the court had satisfied the requirements in Juv.R. 35(B), L.A.B.'s waiver of counsel was valid. *In re L.A.B.*, 9th Dist. No. 23309, 2007-Ohio-1479, 2007 WL 942116, ¶ 7, 14. The court of appeals certified its judgment in favor of appellee, state of Ohio, as being in conflict with the judgment in *In re Lohr*, 7th Dist. No. 06 MO 6, 2007-Ohio-1130, 2007 WL 754696.

{¶ 4} We determined that a conflict exists and ordered the parties to brief the following question: "Does Juvenile Rule 29 apply to probation revocation hearings in juvenile court?" *In re L.A.B.*, 114 Ohio St.3d 1476, 2007-Ohio-3699, 870 N.E.2d 729. We also accepted jurisdiction over the two propositions of law set forth in L.A.B.'s discretionary appeal. *In re L.A.B.*, 114 Ohio St.3d 1478, 2007-Ohio-3699, 870 N.E.2d 731. The first proposition of law asks us to hold that a juvenile has the right to counsel at all stages of the juvenile process and that this right may be waived during a probation revocation hearing only upon strict compliance with federal and state due-process requirements. The second proposition of law asks us to hold that a magistrate's failure to warn a juvenile of the obligation to file objections to the magistrate's decision, pursuant to Juv.R. 40, before permitting the juvenile to waive the right to counsel constitutes structural error.

*L.A.B.'s Previous Hearings*

{¶ 5} L.A.B. initially had been brought before the juvenile court on a burglary charge. At a hearing scheduled as a pretrial on August 24, 2005, after L.A.B.

---

1. Following the initial hearing, L.A.B. appeared before the juvenile court for six probation violation hearings and one dispositional hearing.

stated that he wished to waive his right to counsel, the magistrate questioned him to determine why he wanted to waive that right:

{¶ 6} "THE COURT: You don't want to have a lawyer?

{¶ 7} "[L.A.B.]: No.

{¶ 8} "THE COURT: You are sure?

{¶ 9} "[L.A.B.]: Yes.

{¶ 10} "THE COURT: And why don't you want to have one?

{¶ 11} "[L.A.B.]: Because I know I took the bike."

{¶ 12} After finding that L.A.B. had made a knowing, voluntary, and intelligent waiver of his rights to trial and an attorney, the magistrate accepted L.A.B.'s admission to the charge of burglary. L.A.B. was then placed on probation.

{¶ 13} From his initial hearing date until June 2006, L.A.B. appeared before the court six times to address alleged violations of his probation. At each hearing, the magistrate found that L.A.B. had validly waived his right to counsel, yet, before each hearing, the magistrate did not inquire into the depth of L.A.B.'s understanding of his right to counsel. Generally, the magistrate simply told L.A.B. of his right to counsel and that counsel would be appointed if he could not afford an attorney. At the hearing held on May 17, 2006, L.A.B. was notified of his right to an attorney but not of his right to have one appointed for him. During the May 2, 2006 hearing, the magistrate told L.A.B. of his right to an attorney and the right to have an appointed attorney and also that "an attorney is someone who is licensed to practice law here in Ohio, and that attorney would be familiar with juvenile law."

*June 2006 Hearing*

{¶ 14} On June 8, 2006, L.A.B. appeared before the court for another hearing on a probation violation. The hearing was initiated by a form entitled "PROBA-TION VIOLATION / VIOLATION OF COURT—ORDER," specifying that L.A.B. had violated his probation by not attending the Youthful Offender Program ("YOC") on a regular basis. At the start of the hearing, the magistrate stated that the matter was before the court for a "preliminary hearing on a probation violation" and noted that L.A.B. was present with his mother and probation officer. After confirming that L.A.B. had received a copy of the complaint, the magistrate asked whether L.A.B. sought to have an attorney appointed:

{¶ 15} "THE COURT: All right, [L.A.B.]. You have the right to be represent-ed by a lawyer at any time. If you can't afford a lawyer, I will give you one that you do not have to pay for.

{¶ 16} "[L.A.B.]: Yes.

{¶ 17} "THE COURT: Do you want to be represented by a lawyer or do you want to proceed today without a lawyer?

{¶ 18} "[L.A.B.]: Without a lawyer."

{¶ 19} The magistrate then notified L.A.B. of his other rights and explained that the potential penalty for the probation violation would be the revocation of his probation and commitment to the Department of Youth Services for a term of at least one year and with a maximum term of until he reached 21. L.A.B. was not told that disposition would be made immediately. L.A.B. admitted the probation violation, and the magistrate found that he had knowingly and intelligently given up his rights and admitted the violation.

{¶ 20} The magistrate then noted that L.A.B. had been suspended from his last day of school and that he faced a new charge of theft. At this point, the hearing apparently turned into a dispositional hearing:

{¶ 21} "THE COURT: Is there anything you want to talk about?

{¶ 22} "[L.A.B.]: No.

{¶ 23} "THE COURT: How long you been on probation?

{¶ 24} "[L.A.B.]: I don't know.

{¶ 25} "THE COURT: You don't know?

{¶ 26} "This case that you are—this robbery, F–2 robbery, is July of 2005, so you've at least been on probation—August 24, 2005 you were given six months' probation, so you have been on probation since August of 2005, so like ten months.

{¶ 27} "So I'm going to tell you what, [L.A.B.]. I'm going to ask you right now why you think I should not send you to the Department of Youth Services today, because I'm going to tell you what, you are not going home. Today is a very sad day for you. The bus to DYS leaves on Monday."

{¶ 28} The magistrate then recounted L.A.B.'s progression through the juvenile court before again asking why he should not be sent to the Department of Youth Services:

{¶ 29} "THE COURT: * * * But now you have a new charge of theft coming in, still not doing what you're supposed to be doing all over the place, so [L.A.B.], it's the chance. Tell me why I should not send you to DYS, because the bus leaves on Monday. Why should you not be on it?

{¶ 30} "[L.A.B.]: I don't know.

{¶ 31} "THE COURT: You don't know? Because I know I don't know why you shouldn't be on it. I'm ready.

{¶ 32} "[L.A.B.]: I don't have nothing to say."

{¶ 33} At this point, the magistrate asked the probation officer for his recommendation. The probation officer recommended that L.A.B. go on intensive probation, so that a probation officer with a smaller caseload might have the opportunity to work with L.A.B. The magistrate once again asked L.A.B. if he had anything he wanted to talk about, to which L.A.B. replied, "No." The magistrate then allowed L.A.B.'s mother to speak:

{¶ 34} "Ms. [B.]: * * * All this extending his probation, then going to YOC and all that other extra, it's not going to help. By him getting locked up in the detention center, the same day he going to get released, he's going to do the same thing. Enough is enough. We need to be hard on him and send him where he's supposed to go. I mean, that's just too much.

{¶ 35} "THE COURT: I know. I hate to do it. I mean, intense probation services, you know, Mr. Sims is not an intense probation services probation officer, and he's been giving him intense probation services. He's already seeing him that much.

{¶ 36} "Ms. [B.]: Right.

{¶ 37} "THE COURT: It's not helping.

{¶ 38} "Ms. [B.]: No, it's not."

{¶ 39} The court revoked L.A.B.'s probation and ordered him sent to the Department of Youth Services for a minimum term of one year and a maximum until L.A.B. reached 21.

*Arguments of Parties*

{¶ 40} L.A.B. argues that under the Ohio Rules of Juvenile Procedure, probation revocation hearings are adjudicatory hearings and are thus subject to Juv.R. 29, while the state argues that only Juv.R. 35 applies. The parties also dispute when a waiver of the right to counsel is valid. L.A.B. argues that strict compliance with state and federal constitutional due-process standards must be met, while the state maintains that the court must consider the totality of the circumstances in determining whether waiver occurred. The question before us is how to characterize probation revocation hearings.

## II. Legal Analysis

{¶ 41} Before determining how to characterize probation revocation hearings, we must look at the various definitions in the juvenile statutes and rules. The juvenile court has jurisdiction over a delinquent child, defined in part as "[a]ny child, except a juvenile traffic offender, who violates any law of this state or the United States," R.C. 2152.02(F)(1), or "[a]ny child who violates any lawful order of the court made under [Chapter 2152] or under Chapter 2151 of the Revised Code." Juv.R. 2(I).

*Adjudicatory Hearings*

{¶ 42} An adjudicatory hearing is "a hearing to determine whether a child is * * * delinquent * * * or otherwise within the jurisdiction of the court." Juv.R. 2(B). Juv.R. 29 sets forth the procedures for conducting an adjudicatory hearing. Under Juv.R. 29(B), at the commencement of the hearing, the court must do the following:

{¶ 43} "(3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;

{¶ 44} "(4) Appoint counsel for any unrepresented party under Juv.R. 4(A) who does not waive the right to counsel;

{¶ 45} "(5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent."

*Detention Hearings*

{¶ 46} Juv.R. 7 addresses detention hearings, which "determine whether a child shall be held in detention or shelter care prior to or pending execution of a final dispositional order." Juv.R. 2(L). Detention is defined as "the temporary care of children in restricted facilities pending court adjudication or disposition." Juv.R. 2(K). The Juvenile Rules provide that before a detention hearing, the parties must be informed of the right to counsel, the right to have counsel appointed if a party is indigent, and the juvenile's right to remain silent with respect to allegations of juvenile traffic offenses, delinquency, or unruliness. Juv.R. 7(F)(2).

*Dispositional Hearings*

{¶ 47} A dispositional hearing is defined as "a hearing to determine what action shall be taken concerning a child who is within the jurisdiction of the court." Juv.R. 2(M). Juv.R. 34 establishes the procedure for dispositional hearings for juveniles who have been abused, neglected, and dependent. It also states that "[i]n all other juvenile proceedings," which would include delinquency proceedings, "the dispositional hearing shall be held pursuant to Juv.R. 29(F)(2)(a) through (d) and * * * [w]here the dispositional hearing is to be held immediately following the adjudicatory hearing, the court, upon the request of any party, shall continue the hearing for a reasonable time to enable the party to obtain or consult counsel." Juv.R. 34(A). In delinquency cases, therefore, dispositional hearings are distinct from adjudicatory, detention, and probation revocation hearings because dispositional hearings address what actions will be taken in response to the child's delinquency.

*Probation Revocation Proceedings*

{¶ 48} Juv.R. 35(B) states that "[t]he court shall not revoke probation except after a hearing at which the child shall be present and apprised of the grounds on which revocation is proposed. The parties shall have the right to counsel and the right to appointed counsel where entitled pursuant to Juv.R. 4(A). Probation shall not be revoked except upon a finding that the child has violated a condition of probation of which the child had, pursuant to Juv.R. 34(C), been notified."

*Application of Juv.R. 29 to Probation Revocation Hearings*

{¶ 49} Probation may not be revoked unless the juvenile has violated a court order. The juvenile again becomes a delinquent juvenile under R.C. 2152.02(F)(2) (being "[a]ny child who violates any lawful order of the court made under this chapter or under Chapter 2151 of the Revised Code"). During a probation revocation hearing, the court determines whether a juvenile has violated a condition of probation. Because the conditions of probation are established through a court order, a violation of probation also constitutes a violation of a court order. Since a probation revocation hearing may result in a finding that the juvenile has violated a court order and is delinquent, a probation hearing qualifies as an adjudicatory hearing under the Ohio Rules of Juvenile Procedure.

{¶ 50} Notably, the journal entry form used by the Summit County Court of Common Pleas, Juvenile Division, contains a line for "Hearing Type," followed by a number of boxes that the court marks to indicate which type of hearing it has conducted. The court stated on the journal entry from L.A.B.'s June 8, 2006 hearing that the hearing was of three types: "Preliminary," "Adjudication," and "Disposition." Clearly, then, the court itself believed that the probation revocation hearing encompassed an adjudicatory hearing.

{¶ 51} We find unpersuasive appellee's argument that probation revocation hearings are not subject to the requirements of Juv.R. 29 because Juv.R. 35 provides procedural guidelines for probation revocation hearings and fails to explicitly incorporate Juv.R. 29. In its brief, appellee states, "Juvenile Rule 35 provides a different procedure for a probation violation hearing than for adjudicatory hearing." Juv.R. 35, however, merely sets forth a minimal procedure for probation revocation hearings. It provides that probation shall be revoked only if the child is present at the hearing and has been apprised of the grounds for revocation, that the parties have the right to counsel and appointed counsel pursuant to Juv.R. 4(A), and that probation shall be revoked only upon a finding by the court that the juvenile has violated a condition of probation after having been notified of that condition pursuant to Juv.R. 34(C). Juv.R. 35(B).

{¶ 52} Juv.R. 29, on the other hand, enumerates detailed procedures for an adjudicatory hearing. This rule guides the court through the process for the

entire hearing, including the initial scheduling of the hearing, the notification of rights at the commencement of the hearing, the entry of an admission or denial, and the court's determination of the issues. None of this material, save the right to counsel, is addressed in Juv.R. 35. The procedure in Juv.R. 35 is not, as appellee claims, different from that in Juv.R. 29. Rather, Juv.R. 35 supplements Juv.R. 29. In fact, during the June 2006 hearing that resulted in an order that L.A.B. be sent to the Department of Youth Services, the magistrate generally followed the Juv.R. 29 procedure in addition to the Juv.R. 35 procedure throughout the hearing.

{¶ 53} Appellee is correct in noting that the clause in Juv.R. 29(B)(2) stating that the court must inform a child of the possibility of the case being transferred to adult court under Juv.R. 30 is inapplicable to probation revocation hearings. However, the mere fact that this clause exists among the variety of otherwise applicable procedures in Juv.R. 29 does not lead to appellee's conclusion that Juv.R. 29 is "clearly inapplicable" to probation revocation hearings. Likewise, language in both rules that provides for the right to counsel does not necessitate a finding that Juv.R. 35 supersedes Juv.R. 29 or that Juv.R. 29 cannot be applied during probation revocation hearings.

{¶ 54} Our interpretation is in keeping with recent developments incorporating due-process protections found in adult criminal law into the juvenile courts. Over the past 50 years, courts have increasingly held that while juvenile proceedings are still civil proceedings, juveniles have the right to certain fundamental protections, just as adult criminal defendants do. In stating the standards for waiver of jurisdiction by a juvenile court, the United States Supreme Court noted that juvenile proceedings must allow "the basic requirements of due process and fairness." *Kent v. United States* (1966), 383 U.S. 541, 553, 86 S.Ct. 1045, 16 L.Ed.2d 84. The following year, the court held that juvenile courts must inform juveniles and their parents or guardians of the right to written notice of the charges against the juvenile, the right to counsel, the right to have counsel appointed if they cannot afford counsel, and the right to confront and cross-examine witnesses. *In re Gault* (1967), 387 U.S. 1, 33–57, 87 S.Ct. 1428, 18 L.Ed.2d 527. Most recently, we have explained the proper procedure for determining whether a juvenile has made a valid waiver of counsel in juvenile proceedings. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at paragraphs two, three, and four of the syllabus.

{¶ 55} Given these developments, it appears that the earlier paternalistic approach to juveniles is giving way to an incorporation of more of the due-process protections found in adult criminal law. However, it is still clear that juvenile proceedings have markedly different aims from adult criminal proceedings. Juvenile courts are still venues for facilitating the rehabilitation of the child, but

it is critical for due-process protections to be followed while accounting for the special nature of the juvenile who is delinquent as opposed to the adult who is a criminal defendant.

{¶ 56} A probation revocation hearing may result in the confinement of a child. In the case of a child aged 13, such as L.A.B., this confinement could last up to eight years. In this situation, it is imperative that if a child wishes to waive the right to counsel, the child must do so knowingly and voluntarily. The detailed procedure established by Juv.R. 29 and our corresponding case law aids the juvenile court in ensuring that this right is fully protected in a probation revocation hearing. Such an interpretation also conforms with the mandate of Juv.R. 1 to interpret and construe the Juvenile Rules in a manner that ensures a fair hearing, enforces the constitutional rights of the parties, and secures a simple and uniform procedure.

{¶ 57} Because probation revocation hearings are subject to Juv.R. 29, the totality-of-the-circumstances test established in *In re C.S.* must be used to ascertain whether the child has validly waived the right to counsel. According to this test, if the court substantially complies with Juv.R. 29(D) in accepting an admission, the plea will be deemed voluntary unless there is a showing of prejudice or a showing that the totality of the circumstances does not support a finding of valid waiver of the juvenile's rights. *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 113. To determine whether a child's waiver of counsel is valid under the totality of the circumstances, judges must consider a variety of factors and circumstances. Id. at ¶ 108. These include the juvenile's age, intelligence, and education; the juvenile's general background and experience; the juvenile's background and experience in the court system; the presence or absence of the juvenile's parent or guardian; the language used by the court in describing the juvenile's rights; the juvenile's conduct; and the complexity of the proceedings. Id.

{¶ 58} In juvenile proceedings, "substantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea." Id. at ¶ 113. The present case, when examined under the totality of the circumstances, shows that L.A.B. did not fully understand his right to counsel.

{¶ 59} When his probation was revoked, L.A.B. was 13 years old. At this age and corresponding level of education, he was relatively young to be before the court and unlikely to have a refined understanding of the judicial process and his right to counsel. L.A.B. had been before the court seven times after his initial hearing, but had only brief interactions with the court during each of these hearings, which took on an almost cursory and administrative tone. Because he had never been sent to the Department of Youth Services at the conclusion of any

hearing, it is likely that he did not fully understand and appreciate the potential of his confinement for one to eight years.

{¶ 60} This final hearing abruptly changed from a probation revocation hearing into a dispositional hearing. It was more complex than L.A.B.'s previous hearings, and the quick transition could easily have confused a 13–year–old juvenile and hindered his ability to advocate on his own behalf. Arguably, it was difficult to detect when the dispositional hearing began in this case; L.A.B. was not told that he had a right under Juv.R. 34 to ask the court to continue the hearing so that counsel could be obtained or consulted before his disposition.

{¶ 61} While L.A.B.'s mother was present at the hearing, her statement indicates that her interests likely ran counter to those of her son. She asked the court not to order L.A.B. to undergo intensive probation and instead to commit him to the Department of Youth Services. Significantly, her suggestion conflicted with the recommendation of L.A.B.'s probation officer, who had suggested intensive probation. Any effect of Ms. B.'s presence to assist L.A.B. in making a valid waiver of counsel was nullified by her potentially adverse interest.

{¶ 62} At the hearing, L.A.B. was merely told of his right to an attorney and that one would be appointed for him if he wished. The court gave no specific information about what this right entailed. During L.A.B.'s minimal interaction with the court throughout the hearing, he gave no indication that he fully understood his right to counsel. Indeed, L.A.B.'s statement during the August 2005 hearing that he did not want an attorney "because I know I took the bike" shows that he may have understood that the right applied only to someone who was innocent or sought to challenge the allegations. Throughout his experiences before the court, L.A.B. never was informed of or indicated an understanding of the vital role an attorney plays on behalf of juveniles who admit charges, particularly in the dispositional phase of the proceedings.

{¶ 63} Based on the totality of the circumstances in this case, we hold that L.A.B. did not make a valid waiver of his right to counsel. Accordingly, we vacate the judgment of the court of appeals that the trial court did not err by accepting L.A.B.'s waiver of his right to counsel, and we remand the case to the juvenile court. Because we hold that Juv.R. 29 applies to probation revocation hearings, L.A.B.'s second proposition of law regarding the filing of objections to the magistrate's decision pursuant to Juv.R. 40 is moot.

{¶ 64} When an unrepresented child faces a dispositional hearing immediately following an adjudicatory hearing, the court must ensure that the child understands that a dispositional hearing has begun and that the child may continue the hearing to obtain counsel. Juv.R. 34. While such a statement may seem repetitive when the issue of counsel has already been addressed at the outset, it ensures that the child will understand what phase of the legal process the child is

in and helps to guarantee that the child's rights are preserved as the court enters into the dispositional phase.

### III.  Conclusion

{¶ 65} We hold that a probation revocation hearing is an adjudicatory hearing, which is held to determine whether a child is delinquent as defined by R.C. 2152.02(F)(2); therefore, both Juv.R. 29, setting forth the procedure for adjudicatory hearings, and Juv.R. 35(B), setting forth the procedure for the revocation of probation, are applicable.  Accordingly, the court must analyze the totality of the circumstances as established in *In re C.S.* in determining whether a juvenile has validly waived his right to counsel during a probation revocation hearing.

Judgment reversed
and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, and O'CONNOR, JJ., concur.

O'DONNELL and CUPP, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 66} Respectfully, I dissent.  Based on the facts presented here, I would affirm the judgment of the court of appeals.

{¶ 67} Relevant to the determination the court has before it is the fact that L.A.B. appeared in the juvenile court with his mother.  It is immediately apparent from the transcript of the probation revocation hearing that L.A.B.'s mother was intimately involved in the case and knowledgeable about the proposed options available to the court.

{¶ 68} Lost among the reiteration of the facts and rules in the majority opinion are a misunderstanding of the applicable statute and a misreading of the colloquy between the juvenile court and L.A.B.'s mother.

{¶ 69} R.C. 2151.352 provides that "[a] child * * * is entitled to representation by legal counsel at all stages of the proceedings under [Chapter 2151] or Chapter 2152 of the Revised Code. * * *  If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. * * * Counsel must be provided for a child not represented by the child's parent, guardian, or custodian.  If the interests of two or more such parties conflict, separate counsel shall be provided for each of them."

{¶ 70} Construing this statute, this court has explained that "a juvenile may waive his constitutional right to counsel, subject to certain standards * * *, if he is counseled and advised by his parent, custodian, or guardian.  If the juvenile is

not counseled by his parent, guardian, or custodian and has not consulted with an attorney, he may not waive his right to counsel." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 98. Thus, pursuant to R.C. 2151.352, L.A.B. could validly waive his right to counsel without the benefit of an appointed attorney's advice because his mother was present, actively participated, and spoke on his behalf in the juvenile court proceeding. It is only when there is a conflict of interest between the parent and the child that the juvenile court must appoint counsel before allowing the child to waive the right to counsel.

{¶ 71} Unlike the majority, I do not see a conflict between L.A.B.'s interests and those of his mother. The majority assumes that the recommendation by L.A.B.'s probation officer that the child receive intensive probation was in L.A.B.'s best interest, and it relies on this assumption to conclude that his mother, who advocated against imposing more intensive probation and in favor of committing L.A.B. to the Department of Youth Services, had a "potentially adverse interest" that "nullified" her assistance to L.A.B. in his decision to waive the assistance of counsel. ¶ 61. However, I believe that the majority misunderstands L.A.B.'s mother's position.

{¶ 72} In what I perceive to be a difficult and strong expression of tough love, L.A.B.'s mother told the juvenile court the following:

{¶ 73} "Ms. [B.]: * * * All this extending his probation, then going to YOC and all that other extra, it's not going to help. By him getting locked up in the detention center, the same day he [is] going to get released, he's going to do the same thing. Enough is enough. We need to be hard on him and send him where he's supposed to go. I mean, that's just too much.

{¶ 74} "THE COURT: I know. I hate to do it. I mean, intense probation services, you know, Mr. Sims is not an intense probation services probation officer, and he's been giving him intense probation services. He's already seeing him that much.

{¶ 75} "Ms. [B.]: Right.

{¶ 76} "THE COURT: It's not helping.

{¶ 77} "Ms. [B.]: No, it's not."

{¶ 78} The fact that L.A.B.'s mother did not advocate for intensive probation—which the trial court agreed had been tried and had failed—does not mean that L.A.B.'s mother did not act in her child's best interests in recommending commitment to the Department of Youth Services. The suggestion by the majority that the only action in L.A.B.'s best interest is more intensive probation is false; sometimes, when a child is not getting the message from probation, intensive or otherwise, committing the child to the Department of Youth Services may be in the child's best interest.

{¶ 79} The juvenile court's colloquy with L.A.B.'s mother shows that she actively participated in the probation revocation proceedings, and, because of this participation, the juvenile court was not required to appoint counsel. Further, the juvenile court appears to have considered each of the factors set forth in the totality-of-the-circumstances test. The facts of this case support a finding that under the totality of the circumstances, L.A.B. validly waived his right to counsel. L.A.B. had extensive experience with the juvenile court system, had received prior notifications regarding his rights, and was represented by his mother. There is no indication in the facts of this case that L.A.B. did not know and understand the phase of the proceeding or the consequences of his repeated failure to follow the requirements of his probation.

{¶ 80} The majority today overlooks what L.A.B.'s mother told the juvenile court when she explained that continually extending probation was not working. Both she and the juvenile court realized the import of her words and wanted L.A.B. to get the message before making more serious mistakes.

{¶ 81} Because I believe that L.A.B.'s mother protected her son's best interests, and because the statute permitted her to do so without the necessity of counsel, L.A.B.'s waiver of the right to counsel is valid. Therefore, I respectfully dissent.

CUPP, J., concurs in the foregoing opinion.

_____

Timothy Young, State Public Defender, and Amanda J. Powell, Assistant State Public Defender, for appellant, L.A.B.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Richard Kasay and Philip D. Bogdanoff, Assistant Prosecuting Attorneys, for appellee, state of Ohio.