**[Cite as *In re Haggard*, 2009-Ohio-3821.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

IN THE MATTER OF:                    CASE NO.  2-08-20

   JEFFREY A. HAGGARD,
                                     **O P I N I O N**
ADJUDICATED DELINQUENT CHILD.


IN THE MATTER OF:                    CASE NO.  2-08-21

   JEFFREY A. HAGGARD,
                                     **O P I N I O N**
ADJUDICATED DELINQUENT CHILD.


IN THE MATTER OF:                    CASE NO.  2-08-22

   JEFFREY A. HAGGARD,
                                     **O P I N I O N**
ADJUDICATED DELINQUENT CHILD.


IN THE MATTER OF:                    CASE NO.  2-08-23

   JEFFREY A. HAGGARD,
                                     **O P I N I O N**
ADJUDICATED DELINQUENT CHILD.

Case Nos. 2-08-20, 21, 22, 23

---

**Appeal from Auglaize County Common Pleas Court
Juvenile Division
Trial Court Nos. 2007-DEL-373, 2008-DEL-0021,
2008-DEL-157 and 2008-DEL-158**

**Judgments Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   August 3, 2009**

---

**APPEARANCES:**

   *Amanda J. Powell*  **for Appellant**

   *Darren L. Meade*  **for Appellee**

**SHAW, J.**

**{¶1}**   Delinquent-Appellant Jeffery A. Haggard ("Jeffery") appeals from the October 27, 2008 Judgment Entry of the Court of Common Pleas of Auglaize County, Juvenile Division finding that Jeffery had violated the terms and conditions of his community control and probation and committing him to the Ohio Department of Youth Services ("DYS") for a minimum period of one year.

**{¶2}**   This matter is a consolidated appeal stemming from four underlying cases.  In Case No. 2007 DEL 373 ("373"), Jeffrey was adjudicated delinquent

based on one count of Assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree if committed by an adult, for striking another juvenile while at school on October 11, 2007. Jeffrey was placed on community control and intensive probation for an indefinite period based on his adjudication in Case No. 373.

{¶3} In Case No. 2008 DEL 106 ("106"), Jeffrey was found to be delinquent based on one count of Burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree if committed by an adult and one count of Grand Theft in violation of R.C. 2913.02(A)(2)(B)(2), a felony of the fourth degree if committed by an adult. These charges were based on an incident committed on February 29, 2008 involving the theft of some trading cards. Once adjudicated delinquent in Case No. 106, Jeffrey was committed to DYS for a minimum period of one year not to exceed the attainment of his 21st birthday. It appears from the record that his adjudication was suspended and Jeffrey remained on community control and probation.

{¶4} In Case No. 2008 DEL 157 ("157"), Jeffrey was found to be a delinquent child based on the charges of Theft in violation of R.C. 2913.02(A)(2), a misdemeanor of the first degree if committed by an adult and Criminal Mischief in violation of R.C. 2909.07(A)(1), a misdemeanor of the third degree if

committed by an adult, based on the theft of a bicycle from a Wal-Mart parking lot committed on April 19, 2008.

{¶5} In Case No. 2008 DEL 158 ("158"), Jeffrey was found to be a delinquent child based on the charge of use of air guns in the city of Wapakoneta in violation of Wapakoneta City Ordinance 672.095(a), a minor misdemeanor if committed by an adult. The offense was committed on April 13, 2008.

{¶6} Case Nos. 157 and 158 were adjudicated on May 1, 2008. At the same time, it appears that there was a hearing on a community control violation stemming from Jeffrey's community control sanctions imposed in Case Nos. 373 and 106. This Court was not provided with a record of these proceedings. However, as is evidenced from the May 1, 2008 Entry, the juvenile court found Jeffrey to be a delinquent child as well as a community control and probation violator and ordered Jeffrey committed to DYS for the minimum period of one year to a maximum period not to exceed Jeffrey's attainment of age 21.

{¶7} Instead of committing Jeffrey directly to DYS, the juvenile court suspended Jeffrey's DYS commitment upon Jeffrey's acceptance to the West Central Juvenile Rehabilitation Center ("WCJR") and his successful completion of the WCJR program.

{¶8} On May 14, 2008 Jeffrey was placed on probation with placement at WCJR. On October 20, 2008 an affidavit was filed by Jeffrey's Probation Officer

alleging that Jeffrey violated the terms of his community control and probation by failing to complete the program at WCJR. Jeffrey was terminated from the program at WCJR on October 19, 2008 due to a suicide attempt.

{¶9} On October 21, 2008 a hearing was held on the alleged community control and probation violation. At the October 21, 2008 hearing, Jeffery admitted to violating the terms of his community control and probation. The matter was continued for disposition until October 24, 2008.

{¶10} In an October 27, 2008 Judgment Entry the juvenile court committed Jeffrey to DYS for a minimum period of one year.

{¶11} Jeffery now appeals, asserting three assignments of error.

<b>ASSIGNMENT OF ERROR I</b>

**THE TRIAL COURT VIOLATED JEFFREY HAGGARD'S RIGHT TO COUNSEL AND TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352, AND JUVENILE RULES 2, 4, AND 29.**

<b>ASSIGNMENT OF ERROR II</b>

**JEFFREY HAGGARD'S ADMISSION TO HIS PROBATION VIOLATION WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND JUVENILE RULE 29.**

<b>ASSIGNMENT OF ERROR III</b>

**THE JUVENILE COURT VIOLATED JEFFREY HAGGARD'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH**

**AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION; AND JUV. R. 35, WHEN IT FAILED TO FOLLOW THE REQUIREMENTS OF JUV. R. 35(B).**

{¶12} For ease of discussion, we elect to address Jeffrey's assignments of error out of order.

*Third Assignment of Error*

{¶13} In his third assignment of error, Jeffrey argues that the trial court violated his due process rights when it imposed a suspended commitment without finding Jeffrey had violated a condition of probation of which he had been notified. In particular, Jeffrey argues that he had not been specifically informed that he was required not to commit suicide, not be demoted in the program at WCJR, and to remain vested in the program.

{¶14} Notification of the conditions of probation is governed by Juv. R. 34(C) which provides that " *** [i]n all cases where a child is placed on probation, the child shall receive a written statement of the conditions of probation. If the judgment is conditional, the order shall state the conditions. *** " Moreover, Juv. R. 35(B) controls probation revocation hearings. *In re Nowak* (1999), 133 Ohio App.3d 396, 728 N.E.2d 411; *In re Motley* (1996), 110 Ohio App.3d 641, 674 N.E.2d 1268. Juv. R. 35(B) provides as follows:

> **The court shall not revoke probation except after a hearing at which the child shall be present and apprised of the grounds on which revocation is proposed. The parties shall have the right to**

**counsel and the right to appointed counsel where entitled pursuant to Juv. R. 4(A). Probation shall not be revoked except upon a finding that the child has violated a condition of probation of which the child had, pursuant to Juv. R. 34(C), been notified.**

{¶15} In the present case, Jeffrey was specifically informed in the juvenile court's May 1, 2008 Entry as follows:

**Jeffrey's commitment to detention and to the Ohio Department of Youth Services will be suspended upon Jeffrey's acceptance into the West Central Juvenile Rehabilitation Center. The Court will ORDER that Jeffrey be returned to the West Central Juvenile Detention Center to be screened for admittance into the West Central Juvenile Rehabilitation Center in lieu of the Department of Youth Services commitment. Should Jeffrey be accepted into that Program, his commitment will be with the Rehabilitation Center where he will successfully undergo and complete that program.**

{¶16} No transcript of the April 30, 2008 hearing which was journalized in the May 1, 2008 Entry was provided for this Court. Accordingly, we are bound by a presumption of regularity, that what Jeffrey was told at that hearing was mirrored in the May 1, 2008 Entry. *State v. Miyamoto,* 3rd Dist. No. 14-05-43, 2006-Ohio-1776 quoting *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 7, 615 N.E.2d 617, 1993-Ohio-177; *State v. Pringle,* 3rd Dist. No. 2-03-12, 2003-Ohio-4235, ¶ 10.

{¶17} As noted by Jeffrey, it does not appear that Jeffrey was specifically instructed that a suicide attempt would be considered a violation of his terms of probation. Nonetheless, Jeffrey was informed that a condition of his probation

was to successfully complete the WCJR program. Jeffrey was informed of this condition in the May 1, 2008 Entry. Moreover, the October 20, 2008 motion for a hearing on a community control violation and accompanying affidavit stated the reasons why Jeffrey had been terminated from the WCJR program.

{¶18} Finally, the juvenile court informed Jeffrey at the beginning of the October 21, 2008 hearing that the WCJR program was terminating him, as well as the reasons he was being terminated. Therefore, based on the record before us, we find that Jeffrey was informed of the terms of his probation in compliance with Juv. R. 34(C) and Juv. R. 35(B). Accordingly, Jeffrey's first assignment of error is overruled.

*Second Assignment of Error*

{¶19} In his second assignment of error, Jeffrey argues that his admission to his probation violation was not knowing, intelligent, and voluntary. Specifically, Jeffrey argues that the juvenile court failed to comply with the requirements of Juv. R. 29(D). Juvenile R. 29(D) provides, in pertinent part, as follows:

> **The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:**
>
> **(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;**

> **(2)     The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.**

"An admission in a juvenile proceeding, pursuant to Juv.R. 29, is analogous to a guilty plea made by an adult pursuant to Crim.R. 11 in that both require that a trial court personally address the defendant on the record with respect to the issues set forth in the rules." *In re C.S.,* 115 Ohio St.3d 267, 285, 874 N.E.2d 1177, 2007-Ohio-4919 quoting *In re Smith,* Union App. No. 14-05-33, 2006-Ohio-2788.  In determining whether a trial court complied with the requirements of Crim. R. 11, only substantial compliance is required.  See *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.  In *In re C.S.*, the Ohio Supreme Court held that in a juvenile delinquency case, the preferred practice is strict compliance with Juv.R. 29(D). *In re C.S.,* 115 Ohio St.3d at 285.

> **[I]f the trial court substantially complies with Juv.R. 29(D) in accepting an admission by a juvenile, the plea will be deemed voluntary absent a showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver. For purposes of juvenile delinquency proceedings, substantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea.**

*In re C.S.,* 115 Ohio St.3d at 285-286.

{¶20} In the present case, Jeffrey's hearing began with the following discussion between Jeffrey and the Court:

**The Court: *** The record reflects that an affidavit and motion has been filed alleging that Jeffrey violated terms and conditions of his community control probation in that he was ordered to successfully undergo and complete the programming at the West Central Juvenile Rehabilitation Center and on October 19th the Probation Department was notified that Jeffrey had attempted suicide, had been demoted and was not vested in the programming at West Central and therefore they were recommending his termination. Jeffrey, do you understand what it is you are alleged to have done here?**

**Jeffrey Haggard: Yes, Sir.**

**The Court: If the Court were to find that you are a probation violator as this alleges, the following things can happen, your protective supervision can be placed with the Department of Job and Family Services; your temporary or permanent custody placed with another person; you could be placed into a foster home; you could be placed on community control probation for an indefinite period of time; you could be ordered to make restitution for any damages caused; you could be ordered to perform up to five hundred (500) hours of community service; be ordered to serve up to ninety (90) days in a detention center in each of your four (4) cases, for a total of three hundred and sixty (360) days; you could be fined up to fifty dollars ($50.00). In Case No. 2008-106, your legal custody can be committed to the Department of Youth Services for a minimum period of six (6) months to a maximum period of the attainment of the age of twenty-one (21) in each of your two (2) counts, for a total minimum period of one (1) year to a maximum period of the attainment of the age of twenty-one (21). You can be assessed the court costs and if you have a driver's license it can be suspended or revoked. Do you understand the things that could happen?**

**Jeffrey Haggard: Yes, Your Honor.**

**The Court: Any question about those things?**

**Jeffrey Haggard: No, I understand them.**

> **The Court: Are you sure?**
>
> **Jeffrey Haggard: Yes, Sir.**

(Tr.p. 3-4).

**{¶21}** As evidenced from the above discussion, Jeffrey was informed of what he was admitting to, as well as the consequences of his admission in compliance with Juv. R. 29(D)(1). Jeffrey was further informed as to what rights he was giving up by entering an admission as follows:

> **The Court: Now on the probation violation that has been filed here, you also have the right to have a trial. At the trial it would be up to the Prosecuting Attorney's Office to present evidence to the Court that would convince the Court of your guilt of this probation violation beyond a reasonable doubt. You would not be required to prove or to disprove anything. Do you understand that?**
>
> **Jeffrey Haggard: Yes, Sir.**
>
> **The Court: Now the way that works is that this matter would be assigned to a trial date. At that time the Prosecuting Attorney would call different people into court to testify as to what's in this probation violation. As those people testified you would have the right to ask them any questions that you want to ask them. Do you understand?**
>
> **Jeffrey Haggard: Yes, Sir.**
>
> **The Court: You would also have the right to call into court any person that you want to have testify for you. And if that person would not appear here on their own, you have the right to request that the Court force them to appear. Do you understand that?**

**Jeffrey Haggard: Yes, Sir.**

**The Court: You would also have the right to testify on your own behalf if you want to. However, you are not required to do so, as no one can force you to be a witness against yourself. Do you understand that?**

**Jeffrey Haggard: Yes, Sir.**

**The Court: Any question about any of that?**

**Jeffrey Haggard: No, Sir.**

(Tr.p. 5-6).

{¶22} Based on the discussion between Jeffrey and the juvenile court, we find that the juvenile court's admonition more than substantially complied with the requirements of Juv. R. 29. The juvenile court informed Jeffrey of all of the rights that he was giving up, and then inquired as to Jeffrey's understanding of those rights. Moreover, Jeffrey's own description of how he violated his probation demonstrated his knowledge of the violation.

{¶23} Finally, Jeffrey seems to argue that the trial court was required to inform him of the nature of the allegations and the consequences of admission separately at the time of the admission, apart and in addition to informing him of that information prior to accepting his waiver of counsel. However, we can find nothing in Juv. R. 29 which supports Jeffrey's argument. Accordingly, Jeffrey's second assignment of error is overruled.

*First Assignment of Error*

{¶24} In his first assignment of error, Jeffrey argues that the trial court violated his right to counsel and due process based on its failure to provide counsel where Jeffrey was not counseled by his mother, to ascertain Jeffrey's level of literacy prior to obtaining a written waiver of counsel, and to provide counsel or obtain a waiver of counsel at disposition.

{¶25} The Ohio Supreme Court has recognized that a juvenile has the right to the assistance of counsel in juvenile court proceedings involving criminal aspects. *In re Anderson* (2001), 92 Ohio St.3d 63, 66, 748 N.E.2d 67, 2001-Ohio-131 citing *In re Gault* (1967), 387 U.S. 1, 31-57, 87 S.Ct. 1428, 18 L.Ed.2d 527. Moreover, the Ohio Rules of Juvenile Procedure also provide for a right to counsel in juvenile proceedings. Juvenile Rule 4(A) provides that "[e]very party shall have the right to be represented by counsel[.]"

{¶26} The juvenile right to counsel is also codified in R.C. 2151.352 as follows:

> **A child \*\*\* is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code. \*\*\* If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. The court may continue the case to enable a party to obtain counsel, to be represented by the county public defender or the joint county public defender, or to be appointed counsel upon request pursuant to Chapter 120. of the Revised Code. Counsel must be**

**provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.**

{¶27} In *In re C.S.*, the Ohio Supreme Court revisited the issue of a juvenile's right to counsel noting that "numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to delinquency proceedings." *In re C.S.,* 115 Ohio St.3d at 275-276 citing *State v. Walls,* 96 Ohio St.3d 437, 446, 775 N.E.2d 829, 2002-Ohio-5059.

{¶28} The Ohio Supreme Court has further said that "[w]e believe that the fifth sentence of [R.C. 2151.352] reflects the General Assembly's understanding that *Gault* held that the juvenile may waive his rights, including his right to counsel, see *Gault,* 387 U.S. at 41-42, 87 S.Ct. 1428, 18 L.Ed.2d 527, and that it codifies that right of waiver but only if the juvenile is advised by a parent in considering waiver." *In re C.S.,* 115 Ohio St.3d at 281.

{¶29} To waive the right to counsel, an effective waiver must be voluntary, knowing, and intelligent. *In re C.S.*, 115 Ohio St.3d 283-284 citing *State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399.  To determine if a valid waiver of the right to counsel has occurred, the court is to apply a totality-of-the-circumstances test. *In re C.S.*, 115 Ohio St.3d at 284; See, also, *In re Ramon*, 3rd Dist. No. 4-07-03, 2007-Ohio-5768.  In applying the totality of the circumstances test, a judge is to consider the:

**age, intelligence, and education of the juvenile; the juvenile's background and experience generally and in the court system specifically; the presence or absence of the juvenile's parent, guardian, or custodian; the language used by the court in describing the juvenile's emotional stability; and the complexity of the proceedings.**

*Id.*

{¶30} In addition to the application of the totality of the circumstances test to determine whether counsel has been validly waived, the juvenile court must also comply with procedural guidelines addressed in *In re C.S.* In determining the appropriate form of a waiver of the right to counsel, the court specified that where a juvenile is charged with a serious offense, the waiver of the right to counsel must be made in open court, recorded, and in writing. *In re C.S.*, 115 Ohio St.3d at 284. This requirement is analogous to the requirement for adult offenders charged with a serious offense. *State v. Brooke,* 113 Ohio St.3d 199, 863 N.E.2d 1024, 2007-Ohio-1533 (The *Brooke* Court defined a serious offense as one where the penalty includes confinement of more than six months. The court also required that the written waiver be filed with the trial court).

{¶31} In addition to the execution of a valid waiver in form, prior to the commencement of an adjudicatory hearing, the juvenile court must also comply with the requirements of Juv. R. 29. This Court has recognized that upon the commencement of an adjudicatory hearing against a juvenile, Juv.R. 29(B) requires the court to do the following:

(1) **Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;**

(2) **Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv.R. 30 where the complaint alleges that a child fifteen years of age or over is delinquent by conduct that would constitute a felony if committed by an adult;**

(3) **Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;**

(4) **Appoint counsel for any unrepresented party under Juv.R. 4(A) who does not waive the right to counsel;**

(5) **Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross examine witnesses, and upon request, to have a record of all proceedings made, at public expense if indigent.**

*In re Kimble* (1996), 114 Ohio App.3d 136, 139-140, 682 N.E.2d 1066. The Ohio Supreme Court confirmed this application of Juv. R. 29. *In re C.S.*, 115 Ohio St.3d at 285.

{¶32} In *Kimble* this Court further recognized that "[t]his rights dialogue is mandatory, and failure to advise the child of these constitutionally afforded protections constitutes reversible error." *In re Kimble,* 114 Ohio App.3d at 140 citing *In re Smith* (1991), 77 Ohio App.3d 1, 601 N.E.2d 45. The *C.S.* court adopted the position of many appellate districts holding that "[w]hile the failure to

inform a juvenile of her rights under Juv. R. 29(B) constitutes reversible error, this court has required only substantial compliance with the rule." *In re C.S.*, 115 Ohio St.3d at 285 citing *In re Bays,* Green App. Nos.2002-CA-52 and 20020-CA-56, 2003-Ohio-1256.

{¶33} Although we note that the hearing in the present case was a probation revocation hearing, the Ohio Supreme Court has held that

> **[a] probation revocation hearing is an adjudicatory hearing, which is held to determine whether a child is delinquent as defined by R.C. 2152.02(F)(2); therefore, both Juv.R. 29, setting forth the procedure for adjudicatory hearings, and Juv.R. 35(B), setting forth the procedure for the revocation of probation, are applicable to the hearing.**

*In re L.A.B.,* 121 Ohio St.3d 112, 902 N.E.2d 471, 2009-Ohio-354, at syllabus.

{¶34} In the present case, prior to Jeffrey's adjudication as a probation violator, the following discussion occurred between Jeffrey and the juvenile court:

> **The Court:  Now throughout the course of these proceedings, you have the right to have an attorney represent you.  If you cannot afford an attorney one can be appointed to represent you at little or no cost to you.  Do you understand that?**
>
> **Jeffrey Haggard:  Yes, Sir.**
>
> **The Court:  Do you want to go forward today without an attorney or would you like to have time to talk with an attorney first?**
>
> **Jeffrey Haggard:  I'll go without an attorney, Sir.**
>
> **The Court:  Jeffrey, Ms. Lee is gonna give you a piece of paper which is your written waiver of your right to an attorney.  I**

> **want you to read it. If you do agree with it, sign it at the bottom where it says "Juvenile" and then give it to your mother for her review and if she agrees then she can sign it as well. (Jeffrey and his mother complying.) Now even though you've signed that Jeffrey, if at any time you change your mind and decide you want an attorney all you have to do is tell me, alright?**
>
> **Jeffrey Haggard: Yes, Sir.**

(Tr.p. 3-6).

{¶35} Despite Jeffrey's contention to the contrary, on appeal, we cannot find that he was not counseled by a parent when he decided to waive counsel. Jeffrey's mother was clearly present at the time the waiver was signed and co-signed the waiver, thus providing a clear indication that she agreed that waiving counsel was the correct decision for Jeffrey. Moreover, nothing in the record indicates that either Jeffrey or his mother needed additional time to discuss his waiver or that either objected to waiving counsel. Nevertheless, Jeffrey relies on several cases for the proposition that his consultation with his mother was insufficiently demonstrated on the record to support a finding of a valid waiver of the right to counsel.

{¶36} The Ohio Supreme Court has recognized the right of children to be counseled by a parent and further stated that, when determining the validity of a waiver, "[t]hough it is not dispositive, a key factor in the totality of the circumstances is the degree to which the juvenile's parent is capable of assisting and willing to assist the juvenile in the waiver analysis. The juvenile court judge

must be aware that not all parents may sufficiently counsel and advise, that is, "represent," their child in a delinquency proceeding." *In re C.S.*, 115 Ohio St.3d at 284. However, in *In re C.S.*, although the court noted some circumstances where a parent could not effectively advise a child, the court made no requirements for putting a parent's advisements on the record before the Court.

{¶37} In *In re L.A.B.* 121 Ohio St.3d at 121, the Ohio Supreme Court appears to conclude that where a parent has adverse interests to that of the child, the parent's presence is nullified, with respect to the parent's ability to help a child waive counsel. However, as the dissent in *In re L.A.B.* concludes, making these determinations is difficult and can require a reviewing court to assign interests to the involved parties. The dissent in *In re L.A.B.* observes that the Ohio Supreme Court only nullifies the presence of the parent, in *In re L.A.B.*, due to the court's own conclusion that the parent and child had adverse interests because the parent openly stated a preference in favor of sending the child to DYS where probation had been unsuccessful, a preference the majority assumed was contrary to L.A.B.'s best interests – an assumption criticized by the dissent.

{¶38} Jeffrey would also have us rely on a Second Appellate District case in which the appellate court found an invalid waiver of counsel because the parents were not in a position to render meaningful advice. In *In re T.B.*, 2nd Dist. No. 2008CA83, 2009-Ohio-2551, T.B.'s parents stated that they could not afford

an attorney, and that when they had previously requested counsel for T.B., it had caused significant financial strain for the family. Again, this is another case where a reviewing court was able to affirmatively conclude from the record that child and parent had adverse interests, and therefore, the parents were not in a position to offer meaningful advice to the child. These cases are distinguishable from the case at hand, where nothing in the record indicates that Jeffrey's mother was not in a position to offer meaningful advice to Jeffrey.

{¶39} Therefore, while we recognize the potential for a conflict of interest between a parent and a child when waiving counsel, we are not willing to create a rule that would presume such a conflict in the absence of any indication of conflict in the record. Therefore, in this case, we cannot find Jeffrey's waiver of counsel invalid based upon the mere allegation on appeal of the failure to be counseled by a parent.

{¶40} Jeffrey also alleges that his waiver of counsel did not comply with the mandates of Juv. R. 29(B)(1)-(5). However, as evidenced by the portions of the record excerpted above, the trial court ascertained that the notice requirements were met, informed Jeffrey of what the hearing would involve and the possible consequences of the hearing, informed Jeffrey and his mother of the right to counsel and obtained a valid waiver, informed Jeffrey that he could obtain counsel at any time in the proceedings, and informed Jeffrey of his rights going forward.

Moreover, the juvenile court repeatedly stopped and inquired as to whether Jeffrey understood what he was being told. Therefore, we cannot conclude that Juv. R. 29(B) was in any way violated.

{¶41} Next, Jeffrey argues that the trial court erred by accepting a written waiver of counsel without properly considering the form, Jeffrey's understanding of the form, and his appreciation of the gravity of signing the form. As an initial matter we note that the following "Waiver of Right to Counsel" form dated October 21, 2008 was signed by both Jeffrey and his mother:

> **1. I understand what I am charged with and that I may be placed in a juvenile detention center, the Ohio Department of Youth Services or an adult jail, if I am over age 18.**
>
> **2. I understand that I have the right to have a lawyer help me and represent me in Court.**
>
> **3. I understand that if I, or my parents, do not have money for a lawyer, the Court will get a lawyer for me at little or no costs.**
>
> **4. I understand that if I sign this paper, I am giving up my right to have a lawyer help me and represent me in Court.**

{¶42} This waiver closely mirrors the discussion the juvenile court actually engaged in with Jeffrey. (Tr.p. 3-5). Moreover, during its discussion with Jeffrey the juvenile court repeatedly inquired as to whether Jeffrey understood the rights the juvenile court was explaining and as to whether Jeffrey had any questions concerning the waiver. Therefore, we cannot find that the trial court did not take into account Jeffrey's understanding of his waiver of counsel, or his appreciation

of the consequences of waiving counsel, because in this case, the form was not supplied in isolation. Here, the written waiver of counsel only served to confirm what the juvenile court had already ascertained orally.

**{¶43}** Finally, we note that Jeffrey's school records were included in the record and, although he had some difficulty in school, nothing was supplied to indicate that his level of literacy would not have allowed him to understand such a simple form. Accordingly, we cannot find that the trial court erred in accepting Jeffrey's written waiver of counsel.

**{¶44}** Finally, Jeffrey argues that the trial court erred by not providing counsel or obtaining a valid waiver of counsel at disposition. In making his argument, Jeffrey relies on the recent Ohio Supreme Court pronouncement in *In re L.A.B.*, 121 Ohio St.3d 112, in which the court stated that:

> **[w]hen an unrepresented child faces a dispositional hearing immediately following an adjudicatory hearing, the court must ensure that the child understands that a dispositional hearing has begun and that the child may continue the hearing to obtain counsel. Juv.R. 34. While such a statement may seem repetitive when the issue of counsel has already been addressed at the outset, it ensures that the child will understand what phase of the legal process the child is in and helps to guarantee that the child's rights are preserved as the court enters into the dispositional phase.**

*In re L.A.B.*, 121 Ohio St.3d at 121-122.

**{¶45}** Other Ohio courts have previously found that a juvenile's waiver of counsel at one stage of the proceedings does not preclude him from "asserting his

right to counsel at a later stage." See *In re M.T.*, 12th Dist. No. 2006-04-018, 2007-Ohio-2446 quoting *In re S.J.,* Summit App. No. 23058, 2006-Ohio-4467, ¶ 6, citing Juv.R. 29(B)(5). "Once a juvenile validly waives counsel during the adjudication hearing," which is governed by Juv.R. 29(B), "he does not lose the right to request counsel for the disposition hearing, which is governed by Juv.R. 34." *Id.*

**{¶46}** When considering a situation where a juvenile court had not obtained a valid waiver of counsel at the adjudicatory stage of a hearing, the Twelfth District Court of Appeals has held that "even had appellant validly waived his right to counsel during the adjudicatory hearing, the trial court was still required to advise appellant of his right to counsel and determine whether he wished to waive his right to counsel during the disposition hearing." *In re M.T.*, 2007-Ohio-2446, at ¶24. The same conclusion has been reached by the Ninth District Court of Appeals. In *In re S.J.*, despite the finding of a valid waiver at the adjudicatory stage, the court found that "[a]lthough the right to counsel can be invoked by a juvenile at any stage of the proceedings, the court did not reiterate Appellant's right to counsel during disposition or allow him either to invoke or to waive his right to counsel at that stage," and based on that finding reversed and remanded the matter. *In re S.J.*, 2006-Ohio-4467, at ¶10.

{¶47} We have significant reservations concerning the rule adopted by the Twelfth and Ninth Districts when applied to a case such as the present, where the juvenile court scrupulously adhered to the requirements of Juv. R. 29(B) in securing the initial waiver of counsel at the probation violation hearing, and especially where, as here, the juvenile court advised Jeffrey of his right to an attorney "throughout these proceedings," and further advised Jeffrey that even though he had signed the waiver of counsel, he still had the right to change his mind at any time and request counsel.

{¶48} As applied to this case, particularly with regard to the lack of any indication of conflict in the participation of Jeffrey's mother in waiving counsel, we find the dissenting opinion in *In re L.A.B.* to be the more persuasive opinion. Nevertheless, it is our conclusion that the majority opinion of *In re L.A.B.* unequivocally espouses the position of the Ninth District Court of Appeals in *In re S.J.* regarding the reiteration of the right to counsel and/or the waiver thereof, at any juvenile disposition regardless of any prior waivers or admonitions at adjudication, even though this was not the precise issue before the court in that case. As a result, we find that the juvenile court was required to re-advise Jeffrey of his continued right to counsel at disposition. Because that was not done in this case, Jeffrey's first assignment of error is sustained.

**{¶49}** Based on the foregoing the October 27, 2008 Judgment Entries of the Court of Common Pleas of Auglaize County, Juvenile Division are affirmed in part, reversed in part, and remanded for proceeds consistent with the opinion of this court, specifically for a new dispositional hearing with a reiteration of the right to counsel.

*Judgmenst Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**