[Cite as *In re E.M.P.*, 2024-Ohio-237.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: E.M.P. | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 23CA23 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Fairfield County Court
                                of Common Pleas, Juvenile Division,
                                Case No. DL20230052

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         January 23, 2023

APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

GENYLYNN COSGROVE                          KRISTOPHER K. HILL
ASST. FAIRFIELD CO. PROSECUTOR             GRAHAM & GRAHAM CO., LPA
239 W. Main St., Ste. 101                  17 N. Fourth St., P.O. Box 340
Lancaster, OH 43130                        Zanesville, OH 43702-0340

*Delaney, J.*

{¶1} Appellant minor E.M.P. appeals from the May 15, 2023 Entry of the Fairfield County Court of Common Pleas, Juvenile Division. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following facts are adduced from the record of appellant's bench trial before the Muskingum County Court of Common Pleas, Juvenile Division.

{¶3} This case arose on February 15, 2021, when Jane Doe and appellant, her stepbrother, were both 15 and living in a home in Muskingum County, Ohio, with Mother, Father, and two young siblings. Mother and Father were out of town for a short vacation. Step-Grandmother was at the house babysitting the younger siblings with the help of Jane Doe and appellant.

{¶4} An unidentified friend of Step-Grandmother was also present; at some point, this person provided Jane and appellant with a bottle of vodka. Jane testified she tasted alcohol before, but did not regularly drink and had never been "drunk." At first, Jane poured the vodka into a shot glass and drank at least six shots, but then poured the remainder into a soda can and a soda bottle that she continued to drink from.

{¶5} Jane helped Step-Grandmother prepare the younger siblings for bed. Jane testified she was unsteady and held herself up against a wall, but Step-Grandmother did not ask if anything was amiss. Appellant told Jane to "slow down" on the vodka because the effects would creep up on her.

{¶6} Jane went to her bedroom and spoke to her boyfriend, "J.J.," on the phone. J.J. could tell Jane was drunk and told her to stay in her room and go to sleep; he assumed

she followed his advice, although he realized later she eventually left the house and was 45 minutes away.

{¶7} Jane and appellant were friends before their parents married and had the same friend group at school, although Jane didn't know appellant's Girlfriend well. While still in her bedroom, Jane Facetimed on her phone with Girlfriend and their mutual friend John Roe, both also minors at the time. John Roe was a neighbor and rode the bus with Jane and appellant. Jane and appellant made plans to sneak out of the house that night to go to Girlfriend's house after everyone was asleep.

{¶8} Girlfriend testified Jane was "obviously drunk" during the Facetime chat, describing Jane laying on the floor "with her behind hanging out" and slurring her words. T. 170. Jane was at first in bed and then on the floor during the Facetime chat. At some point, appellant came into Jane's bedroom and joined her on the Facetime call.

{¶9} Girlfriend testified appellant took the phone away from Jane because she was "being too much," talking about wanting to have sex with John Roe due to issues she was having with J.J. Appellant took Jane's phone from her and ended the Facetime chat.

{¶10} Jane testified appellant ended the Facetime chat when he realized she was so drunk she was falling asleep. Jane was laying on her stomach on the bed; she testified appellant propped her legs up and pulled her pants down. She asked him what he was doing. Appellant said "you're fingering yourself" but appellant placed his own fingers in her vagina. Jane was intoxicated but realized she was not doing this to herself. She straightened her legs to push appellant off and said "this isn't happening." Appellant took his belt and pants off, and his penis was out. Jane testified appellant penetrated her vagina with his penis; she is sexually active and was aware of what intercourse felt like.

She continued to straighten her legs and pushed appellant off. Appellant put his clothes back on and said, "Let's go."

{¶11} Jane accompanied appellant to a cemetery down the street from their house where they were picked up in a car by Girlfriend's family member. Jane accompanied appellant to Girlfriend's house, where the three sat in Girlfriend's bedroom with John Roe. Girlfriend testified she and appellant were on her bed, and Jane and John Roe were on the floor. Jane testified John Roe "tried" to have sex with her.

{¶12} Girlfriend described events at her house in more detail. She said Jane brought alcohol with her and was the only one drinking. Girlfriend did not notice any strange behavior between appellant and Jane; Jane did not seem to be in fear of appellant, or angry with him, or unwilling to be around him. She said Jane was "not all the way drunk;" the trial court asked for clarification and Girlfriend said Jane was "conscious" and could speak, but "wanted to have sex with everyone" for revenge on her boyfriend, J.J. Girlfriend claimed Jane "begged" to have sex with John Roe and he complied, although he was unsure because she was drunk.

{¶13} Jane was eventually dropped off at the cemetery and she walked home. Shortly after arriving home, around 5:00 a.m., Police Chief Rodney Walters knocked on her door in response to a report of a sexual assault. Jane answered the door to Walters, keeping her voice down because everyone was asleep. Walters advised Jane someone reported she was sexually assaulted and Jane said she didn't want to talk about it. Walters testified he could tell Jane had been drinking, but she was able to speak coherently and was not stumbling. After conversation with Step-Grandmother, Walters

transported Jane to Genesis (fka Bethesda Hospital) for examination by a SANE and preparation of a rape kit.

{¶14} Jane first told Walters she didn't want to talk about it, then admitted she was "messed with" sexually, but only by John Roe. She said appellant was part of the group drinking together, but did not tell Walters appellant sexually assaulted her. Walters first learned of the allegations against appellant when he observed Jane's forensic interview at Harcum House.

{¶15} Jane arrived at Genesis around 6:45 and met with the SANE, who testified at trial. Jane told the SANE she had too much to drink was laying down when an assailant inserted his fingers and penis in her vagina. The SANE prepared swabs and collected evidence for a rape kit which she gave to Walters.

{¶16} Jane was subject to a forensic interview at Harcum House Child Advocacy Center on February 24, 2021, and the interviewer was appellee's witness at trial. The interviewer testified she is part of a multi-disciplinary team who questions child victims of alleged sexual assault to prevent the child from repeating the allegations and being re-traumatized. Jane disclosed penetration by penis and fingers of two assailants, one of whom she identified as her stepbrother, appellant. Jane told the interviewer she and appellant were drinking; she went to bed and was on a Facetime call; appellant came into the room and stopped the Facetime call; he placed his fingers and his penis in her vagina; and afterward they left the house together. Jane further stated she and appellant went to a second location where she was sexually assaulted by a second person.

{¶17} Jane was questioned why she didn't immediately tell Walters that appellant sexually assaulted her in addition to John Roe, and why she voluntarily left the house with

appellant after the assault. Jane testified she was drunk, confused, and didn't know what to do. Her parents had recently obtained custody of appellant and she didn't want to ruin everything. Jane acknowledged she was very drunk, although she knew the sexual intercourse was nonconsensual. She admitted she did not at first tell Walters about the incident with appellant, but she admitted the entire story when she was interviewed by the SANE at the hospital. Jane's testimony on direct examination concluded with her confirmation that she was not asleep when the sexual intercourse occurred; she was "not in her normal state of mind" because she had been drinking; and she did not consent to sex with appellant. T. 224.

{¶18} Jane's rape kit was analyzed by a B.C.I. forensic scientist and compared to D.N.A. standards from J.J., John Roe, and appellant. A stain in Jane's underwear contained D.N.A. matched to J.J., who was eliminated as a source of consensual contact within 72 hours of the reported sexual assaults. The stain also contained a mixture of D.N.A. from two unknown males, as did vaginal and anal swabs. The analyst could not conclusively match appellant or John Roe to these samples and ruled them "inconclusive," although neither appellant nor John Roe could be excluded as the sources of D.N.A. found in the mixture. Swabbing from a front panel of Jane's underwear was later determined to be consistent with John Roe's D.N.A.

{¶19} At trial, appellant's Girlfriend repeatedly described Jane as "drunk" when she arrived at Girlfriend's house after the sexual assault by appellant and during the sexual assault by John Roe. Girlfriend testified she and appellant did not talk about that night for about a month, until appellant told her why he was staying with his grandparents. Girlfriend testified she "didn't really remember" the specifics of what appellant told her,

but he did admit inserting his fingers into Jane's vagina; appellant told Girlfriend Jane wanted to have sex with him but he wasn't sure because he knew Jane was drunk.

*Charges, trial, findings, and disposition*

{¶20} Appellant was charged with one count of delinquency by means of rape pursuant to R.C. 2152.02 and R.C. 2907.02(A)(2), a felony of the first degree [Count I]; one count of delinquency by means of rape pursuant to R.C. 2152.02 and R.C. 2907.02(A)(1)(C), a felony of the first degree [Count II]; one count of delinquency by means of gross sexual imposition pursuant to R.C. 2152.02 and 2907.05(A)(1), a felony of the fourth degree [Count III]; and one count of delinquency by means of gross sexual imposition pursuant to R.C. 2152.02 and R.C. 2907.05(A)(5), a felony of the fourth degree [Count IV].

{¶21} The matter proceeded to adjudicatory hearing in Muskingum County. At the close of testimony, appellee dismissed Counts III and IV. The magistrate took Counts I and II under advisement. By judgment entry dated November 10, 2022, the magistrate acquitted appellant upon Count I but found appellant delinquent by means of rape upon Count II. Appellant objected to the magistrate's decision and the trial court overruled the objections on February 7, 2023.

{¶22} On March 21, 2023, the case was transferred to Fairfield County, appellant's county of residence, for disposition. The Fairfield County Court of Common Pleas, Juvenile Division noted appellant was found guilty upon Count II in Muskingum County; placed appellant on probation with a suspended DYS commitment; imposed a fine of $100 and court costs; ordered him to have no contact with the victim or children

under the age of 14; and ordered appellant to complete a Sexually Aggressive Youth Treatment Program.

{¶23} Appellant now appeals from the May 15, 2023 Disposition order of the Fairfield County Court of Common Pleas, Juvenile Division.

{¶24} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶25} "I. THE STATE DID NOT ESTABLISH, BEYOND A REASONABLE DOUBT, ALL ELEMENTS OF THE OFFENSE OF RAPE, A FELONY OF THE FIRST DEGREE IN VIOLATION OF R.C. 2907.02(A)(1) AS ALLEGED IN COUNT II."

{¶26} "II. THE STATE DID NOT ESTABLISH, BEYOND A REASONABLE DOUBT, THAT THE ALLEGED VICTIM'S ABILITY TO RESIST OR CONSENT WAS SUBSTANTIALLY IMPAIRED BECAUSE OF INTOXICATION OR ANY OTHER MENTAL OR PHYSICAL CONDITION; OR THAT THE ALLEGED DELINQUENT CHILD KNEW OR HAD REASONABLE CAUSE TO BELIEVE THE ALLEGED VICTIM'S ABILITY TO RESIST OR CONSENT WAS SUBSTANTIALLY IMPAIRED."

**ANALYSIS**

**I., II.**

{¶27} Appellant's assignments of error are related and will be considered together. He argues his conviction upon one count of rape pursuant to R.C. 2907.02(A)(1)(C) is not supported by sufficient evidence.  We disagree.

{¶28} When assessing a sufficiency-of-the-evidence challenge, a reviewing court must "examine [all] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). While a manifest-weight challenge questions whether the state has met its burden of persuasion, the test for sufficiency of the evidence requires a determination whether the state has met its burden of production at trial. *Id.* at 390.

{¶29} Appellant was convicted upon one count of rape pursuant to R.C. 2907(A)(1)(c), which states: "No person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *." "Sexual conduct" includes vaginal intercourse between a male and female and, without privilege to do so, the insertion, however slight, of any part of the body into the vaginal opening of another; penetration, however slight, is sufficient to complete vaginal intercourse. R.C. 2907.01(A).

{¶30} In the instant case, appellee alleged appellant penetrated Jane's vagina with his fingers and penis when Jane was substantially impaired by alcohol and unable to consent, and appellant was aware Jane's ability to consent was substantially impaired.

*Trial court's findings on R.C. 2907.02(A)(1)(c) and R.C. 2908.02(A)(2)*

*not contradictory*

{¶31} In his first assignment of error, appellant argues the trial court's conclusions of law are contradictory because he was found not guilty of rape pursuant to R.C. 2907.02(A)(2) but guilty of rape pursuant to R.C. 2907.02(A)(1)(c).

{¶32} R.C. 2907.02(A)(2) states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Force" is defined by R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Some amount of force must be proven beyond the force inherent in the crime itself. *In re D.G.*, 5th Dist. Stark No. 2023 CA 00019, 2023-Ohio-3859, ¶ 27*, citing *State v. Dye*, 82 Ohio St.3d 323, 695 N.E.2d 763 (1998). The "force" element of R.C. 2907.02(A)(2) is demonstrated through evidence the force was sufficient to overcome the victim's will. *State v. Rucker*, 2020-Ohio-2715, 154 N.E.3d 350, ¶ 17 (8th Dist.), internal citations omitted.

{¶33} In the instant case, the magistrate specifically found no evidence of force as defined supra, and we agree. Findings of Fact/Conclusions of Law, November 10, 2022, 2. Appellant's argument on appeal equates "force" with the inability to consent to sexual conduct, asking "How can you say that the alleged victim was not forced, while at the same time stating that she was not able to give consent?" Brief, 4. The answer is contained in the plain language of the rape statute because appellant was charged with two different types of rape, each requiring proof of different elements.

{¶34} A finding of guilt upon R.C. 2907.02(A)(1)(c) does not preclude a finding of not guilty upon R.C. 2907.02(A)(2) and vice-versa. In the instant case, "force" pursuant to R.C. 2901.01(A)(1), supra, is not present.

{¶35} However, the trial court also found, and we agree, that the record is replete with evidence appellant engaged in sexual conduct with Jane Doe when her ability to resist or consent was substantially impaired because of her alcohol consumption, and appellant knew or had reasonable cause to believe that her ability to resist or consent was substantially impaired because of her alcohol consumption. R.C. 2907.02(A)(1)(c). In his second assignment of error, appellant argues this finding is not supported by sufficient evidence.

{¶36} The term "substantially impaired" is not statutorily defined, therefore the term must be given the meaning "generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987). The state can show substantial impairment by offering evidence "demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of [her] conduct or to control [her] conduct." *Id.* at 103-104. It is well-recognized by Ohio courts that voluntary intoxication can constitute a mental or physical condition that substantially impairs a person's ability to resist or consent to sexual conduct. *In re L.S.*, 6th Dist. No. OT-17-021, 2018-Ohio-4758, 125 N.E.3d 219, ¶ 18. Substantial impairment can occur when a person consumes large amounts of alcohol in a short period of time. *State v. Lasenby*, 3d Dist. Allen No. 1-13-36, 2014-Ohio-1878, 2014 WL 1801714, ¶ 28, citing *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 22 (2d Dist.). "'[S]tumbling, falling, slurred speech, passing out, [and] vomiting,' are all evidence that an intoxicated person is substantially

impaired." *Id.*, quoting *Hatten* at ¶ 24. "[T]he determination of substantial impairment is made 'on a case-by-case basis, providing great deference to the fact-finder.'" *State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, 2015 WL 2452024, ¶ 58, quoting *Lasenby* at ¶ 27, citing *State v. Brown*, 3d Dist. Marion No. 9-09-15, 2009-Ohio-5428, 2009 WL 3258845, ¶ 22. It may be shown by the testimony of people who interacted with the victim and by the trier of fact's assessment of the person's ability to control his or her conduct. *Canterbury* at ¶ 58.

{¶37} In the instant case, evidence of Jane's alcohol consumption and her resulting substantial impairment was demonstrated by the testimony of Jane and witnesses including Girlfriend, J.J., and Walters.

{¶38} Jane testified to her own consumption of a large quantity of vodka in the hours leading to the sexual conduct. We acknowledge "substantial impairment contemplated in the rape statute is not synonymous with intoxication." *State v. Foster*, 8th Dist. No. 108340, 2020-Ohio-1379, 153 N.E.3d 728, ¶ 44, internal citations omitted. Moreover, "substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim." *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, 2007 WL 926365, at ¶ 78; *see also State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, 2015 WL 2250459, ¶ 43. The victim's own testimony is also sufficient to prove substantial impairment. *Hansing* at ¶ 13, citing *State v. Dasen*, 9th Dist. Summit No. 28172, 2017-Ohio-5556, 2017 WL 2802235, ¶ 19.

{¶39} In the instant case, while intoxication does not equate with substantial impairment, when viewed in a light most favorable to appellee, the evidence showed Jane

consumed in excess of six shots of vodka and continued to sip on a can filled with vodka; Jane described herself as "very drunk" as she helped her siblings get ready for bed; she was falling asleep during the Facetime chat when appellant took the phone away from her and turned off the call. Girlfriend testified Jane was drunk throughout the Facetime chat. We find this evidence is sufficient to establish Jane's intoxication and substantial impairment at the time of the sexual conduct.

{¶40} The law also requires appellee to produce legally sufficient evidence to show appellant knew or had cause to believe Jane was substantially impaired. *Foster, supra,* 2020-Ohio-1379, 153 N.E.3d 728, ¶ 46. Whether an offender knew or had reasonable cause to believe the victim was impaired may be reasonably inferred from a combination of the victim's demeanor and others' interactions with the victim. *State v. Jones,* 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 43, citing *State v. Novak,* 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶ 25. Evidence that should have alerted an offender to whether a victim was substantially impaired may include evidence that the victim was stumbling, falling, slurring speech, passing out, or vomiting. *State v. Hatten,* 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 50 (2d Dist.). Jane testified appellant told her to slow down on the vodka and that the effects would creep up on her; Jane and Girlfriend testified appellant took the phone away from her as Jane was falling asleep on the Facetime chat. Therefore we find evidence appellant was aware of Jane's consumption of a large quantity of alcohol. *See, Foster, supra,* at ¶ 57. Moreover, although Jane testified appellant also drank the vodka, there was no evidence he was intoxicated or unable to perceive Jane's condition. Girlfriend testified appellant later told

her Jane asked him to have sex with her that night but he hesitated because he knew Jane was drunk.

{¶41} The uncontroverted evidence at trial therefore established Jane's ability to resist or consent was substantially impaired because of her alcohol consumption, and appellant knew or had reasonable cause to believe Jane's ability to resist or consent was substantially impaired. See, *State v. Mason*, 5th Dist. Delaware No. 15-CAA-02-0017, 2015-Ohio-5508; *In re Jorgensen*, 5th Dist. Licking No. 07-CA-96, 2008-Ohio-2967, ¶ 236, appeal not allowed, 119 Ohio St.3d 1489, 2008-Ohio-5273, 894 N.E.2d 1245 [victim testified to multiple alcoholic drinks and feeling drunk; witnesses observed victim drinking, stumbling, and slurring words]; *State v. Hogan*, 5th Dist. Richland No. 09-CA-33, 2009-Ohio-4728, ¶¶ 27-29.

{¶42} Appellant points to Walters' testimony that when he made contact with Jane around 5:30 a.m., he could tell she had been drinking but she did not seem intoxicated. We note the sexual conduct with appellant occurred hours earlier, after appellant ended the Facetime chat, before the two left to walk to the cemetery. Girlfriend testified it was evident Jane was "drunk" throughout the Facetime chat. T. 174. The sexual conduct occurred after the Facetime chat ended. We find Walters' observation of Jane hours later not to be dispositive of her state of mind at the time of the rape.

{¶43} Appellant cites Girlfriend's testimony that Jane didn't appear "all the way drunk" and was "still conscious." We note, however, that Girlfriend described Jane as "obviously drunk" for the entirety of the call (T. 170), said Jane was "just being too much" leading appellant to take the phone away from her (T. 173), and described Jane laying on the ground "with her butt hanging out" because she was drunk. T. 174-175.

{¶44} Moreover, Girlfriend testified appellant admitted penetrating Jane with his fingers (T. 176) and appellant told her Jane asked to have sex with him but he was uncertain because Jane was really drunk. T. 177. Appellant's Girlfriend blamed Jane's drinking and minimized appellant's culpability, but she was a compelling witness to the immediate circumstances surrounding the sexual conduct and unwittingly established the elements of a violation of R.C. 2907.02(A)(1)(c).

{¶45} Viewing the evidence in a light most favorable to appellee, we find the trial court could have found the essential elements of rape proven beyond a reasonable doubt. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trial court, as the trier of fact in this case, was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens*, 10th Dist. Franklin No. 95AP09-1236, 1996 WL 284714 (May 28, 1996).

{¶46} Appellant's conviction is supported by sufficient evidence and the two assignments of error are overruled.

**CONCLUSION**

{¶47} Appellant's two assignments of error are overruled and the judgment of the

Fairfield County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.